Executor, Successor Adm.,
Personal Representative,
Proxy, pro se

JOSEPH JOHNSON
Counsel of record as "Next Friend'

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI

_____  x

ESTATE OF P.D. JOHNSON & JOHNSON, et al[1]

Plaintiff,

-against-

UNITED STATES, et al[1]
Ronald W. Reagan, Former President
George H.W. Bush, Former President
William J. Clinton, Former President
George W. Bush, Former President
Barack H. Obama, President

Defendants,

_____  x

## COMPLAINT

Plaintiff Estate of P.D. Johnson & Johnson, et al ("Johnson"), for this Complaint against defendants United States, et al ("U.S."), Ronald W. Reagan, George H.W. Bush, William J. Clinton, George W. Bush all Former Presidents and Barack H. Obama, President, and collectively with defendants Known and Unknown, alleges:

## SUMMARY

1. This case charges the Defendants with knowingly or recklessly participating in a conspiracy with state actors of the State of Missouri in a scheme stemming from the initial defrauding of an estate to executing a domestic surveillance under a shroud of secrecy.

_____

[1]Plaintiffs and Defendants cited herein are parties noted in attached Brief, pgs. ii- ix: Cited individually or collectively as state and federal actors in a enjoined conspiracy.

2. For more than twenty years, the Defendants (Presidents) enable the Central Intelligence Agency ("CIA") and the National Security Agency ("NSA") to conduct a domestic surveillance and communications intercept program against U.S. persons inside the United States, and that Unknown Defendant(s) Public Official of the State of Missouri, state actors did solicit the defendant (U.S.) to implement a retaliatory investigation against Plaintiff (Johnson), as the result of the plaintiff filing a cause of action in the State Circuit Court of Missouri in defense of an Estate listing their parents Plaintiffs P.D. Johnson, Decedent and Vandelia W. Johnson, Administrator, Deceased.

3. The Defendants (Congress 100th - 111th Sessions) were instrumental in the criminal enterprise. They enacted Bill of Appropriations and authorized the withdrawal money from the U.S. Treasury to finance the domestic surveillance by said Agencies of the (U.S.). Defendants (District Court and Supreme Court Judges) were instrumental in the criminal enterprise. They employed acts of deception and impersonations in the District Court by using a state actor to impersonate the office of a federal Magistrate, and a Judge of the District Court impersonating the office of Judge of the Court of Appeals, and Justices of the Supreme Court having knowledge of the domestic surveillance from the onset in the year 1988 and the impersonating of Officers of the lower Court, having engaged in a well-organized scheme of secrecy to prevent the discovery of the financing of and did use the federal courts to deny redress to the Plaintiff.

4. The Defendant (U.S. and state actors) sought to hide all aspects of their scheme from public knowledge by imposing a arbitrary gag-order on the American press, or the (U.S.) solicited segments of the press not to report or segments of the press were in agreement not to report any details of the criminal enterprise that were discovered independently by the press, or were revealed by confidential sources within the (U.S. government), that the (U.S.) and the press had a active working relationship in the scheme to conceal from the American public concerning the illegal conduct of their government.

5. The Defendant (Presidents) as Chief Executive directed heads of departments with the Department of Justice ("DOJ") the Office of the Attorney General ("AG"), Federal Bureau of Investigation ("FBI") to assist in the surveillance program by the (CIA) and (NSA) by not investigating the activities authorized by said (Presidents) and not to prosecute the individuals Unknown Defendants, i.e. Agencies employees, Operatives or Contractor acting on behalf of said Agencies, private businesses and private citizens solicited to assist in the facilitation of the surveillance program.

6. In the twenty plus years the Defendants (et al) they were acting in concert in the violation of the laws of the (U.S.) and having committed constitutional torts effecting civil rights and took affirmative steps indicating that they knew or recklessly disregarded that the Defendants (et al) were engaged in concealing a fraud against an estate involving attempted thefts within the Probate Division. Among other things.

* The Defendant (U.S. and state actors) as part of their scheme did grant the

2

estate's attorney in the Probate Division consent to transfer to the Circuit Court in order to withdraw and pray for fee, but the defendant judges of the federal judiciary sought to turn away any attempt by the Plaintiff to appoint Counsel i.e. a Legal Advocate as "next friend" for the estate and (Johnson).

*   In order to carry out the scheme to deny (Johnson) access to the federal courts, the judges of the Eight Circuit en banc denied every petition for redress submitted on behalf of the Plaintiff from 1989-1991. Following the actions or the lack thereof of the Court of Appeals and Supreme Court of the State of Missouri being silent on the issues raised by (Johnson) on petition to the state's appellate courts.

*   The Defendant Judges of the Missouri Supreme Court had knowledge that an employee of the State of Missouri Chief Judge James A. Pudlowski, of the Court of Appeals in 1989 had impersonated the office of a federal Magistrate and had issued an order to deny a petition by (Johnson) under the "Seal" of the (U.S.) District Court.

*   Both Defendants Justice of the (U.S.) Supreme Court and Judges of the Missouri Supreme Court having supervisory authority over the lower courts within their respective jurisdictions, maintained a cloud of secrecy in failing to disclose to the Plaintiff (Johnson) that James A. Pudlowski was not a federal Magistrate in 1989.

*   That Judges of the District Court and (U.S.) supreme Court did engage in a scheme to enter into secret ex parte hearings and communications with Defendant know and unknown acting as Counsel of record for the (U.S.) outside of the presence of the Plaintiff (Johnson), and did direct Clerks of Courts of the United States not to execute service upon the plaintiff's Counsel as "next friend" of orders entered by the federal court in violation of the due process rights of the Plaintiff (Johnson).

*   The office of the (AG) did not initiate a civil proceeding to enjoin with the Plaintiff (Johnson) before the Eighth Circuit as required under federal Law in Title III violations, in order to prevent the further deprivation of the civil rights of the Plaintiff (Johnson, et al) by Judges of the state and federal judiciary acting in concert with one another in impersonating offices under the seal of the (U.S. government).

7. A succession of Attorney Generals knew or recklessly disregarded facts that indicated the (CIA) and (NSA) was engaging in a continuing surveillance program. Among other red flags:

*   A succession of Attorney General were privy to Annual Reports outlining the intercept program by the (CIA) and (NSA) as required by law under Executive Orders.

3

* A succession of Attorney General knew that a succession of Directors of (CIA) and (NSA) made Annual FISA Reports from 1988-present, to the Defendant (Chairman and Vice Chairman of the Intelligence Committees) of the Congress.

* A succession of Attorney Generals and Chief Justice of the (U.S.) Supreme Court retained the authority over the secrecy of the material seized under the intercept program orchestrated by the (U.S. government).

8. By knowingly or recklessly disregarding these red flags, the Defendant a succession of Attorney Generals and the Department of Justice did conspire to commit acts infurtherance of the scheme and other violations alleged in the Complaint.

## VIOLATIONS

9. By virtue of the conduct alleged herein,

a. Defendant (et al) directly or indirectly, singly or in concert, have engaged in acts, practices, schemes and course of business that violated Title 18 U.S.C. sec. 241 and sec. 242, violated and aided and abetted violations of Section 103[50 U.S.C. 403-3](d)(1) of the National Security Act of 1947, violated and aided and abetted violations of 18 U.S.C. SS 2510-1521 of the Electronic Communication Privacy Act of 1986, violated and aided and abetted violations of Pub.L. 91-452, 84 Stat. Ch. 96 18 U.S.C. S 1961-1968 of the Rico Act, 18 U.S.C. sec. 2510 et seq. Of the Omni Crime Control & Safe Street Act of 1986, Title 50 S 1805(b) sec. (a)(5)(C) of the Foreign Intelligence Surveillance Act of 1973, 50 U.S.C. sec. 403(a) of the CIA act of 1949, violated and aided and abetted violations of 18 U.S.C. S 1341, United States Signal Directive 18 (USSID 18) of 1980, Section 104(a) of the Act 50 U.S.C. S 463-4(a) of the CIA Act of 1947, Sec. 2(3) of the CIA Act of 1978, Sec. 50 U.S.C. 403(a0(30 sec. 102(d)(30 of the National Security Act of 1947, Pub. L. 104-292 H.R. 3166 of Oct. 11, 1966 sec. (a)(1-3) of the False Statement Accountability Act, Section 31 CFR 103 of the Bank Secrecy Act of 1970, Section 2.7 of Executive Order 12333, Section 1.1(b)(d) of Executive Order 12333 and see related offenses cited in Plaintiff's supporting Brief pgs. xxviii-xxxii.

b. Defendant (Presidents) violated and aided and abetted in the violations of directives issued by the Office of the Presidency in lieu of Executive Order 12333 Sections 1.1(b)(d) sec. 2.7 and sec. 3.1 in ordering the (CIA) to conduct the surveillance against U.S. persons.

c. A succession of Attorney General and Directors of the (FBI) aided and abetted in the surveillance program by failing to investigate, to cease and desist, and failing to prosecute violations of the laws of the (U.S.) violating, Section 2511, 2112, 2701, 3212, & 2232 of Title 18 of the (U.S.) Code.

4

## NATURE OF THE PROCEEDINGS AND RELIEF SOUGHT

10. The Plaintiff brings this action pursuant to the authority conferred to the Plaintiff (Johnson) as a "protected class" as African American under the Civil Rights Act of 1866 & Civil Rights Act of 1871-CRA-42 U.S. Code 21 SS 1981, 1981A, 1983, & 1988, Sec. 1981(a)(b)(c) right to make and enforce contractual obligations, Sec. 1983 the right to file suit for deprivation of rights, and Sec. 1988(a) to file suit before the district court for vindication of civil rights pursuant to the provisions under Title 13, 24, and 70 of the Revised Statutes, and Tile VI of the Civil Rights Act of 1964 [42 U.S.C. 2000d et seq.] or sec. 123981, seeking to restrain and enjoin permanently the Defendant from continuing to engage in the acts, scheme, practices and course of business alleged herein.

11. In addition to the injunctive relief cited above, the Plaintiff seek: (i) final judgment ordering Defendants (et al) to pay both compensatory and punitive damages with prejudgment interest thereon; (ii) final judgments ordering the Defendant (U.S.) culpably liable for any civil penalties resulting from acts committed by "state actors" under the doctrine of "exclusive federal damages remedy" under sec. 1983, and prior liability caps under sec. 706(g) of the Civil Rights Act of 1964 or cited in any related Statutes, or court precedent is "waived" effective the 16th day of December 1991 and (iii) Plaintiff prays for civil penalties cited against the Defendant (et al) in the plaintiff's supporting Brief and such other relief as the Court deems just and appropriate for cost and fee.

## JURISDICTION AND VENUE

12. This Court has concurrent jurisdiction over this action pursuant to 28 U.S.C. 1346(b) 28 U.S.C. S 2678 and 28 U.S.C.S S 2402 jury trial if warranted.

13. Venue is proper in the District of Columbia pursuant to 28 U.S.C.S. S 1346(b) The Defendants, directly and indirectly, have made use of the means and instruments of the state and federal courts, or of the mails and wires, in connection with the transactions, acts, practices and courses of business alleged herein and supporting Brief. A substantial part of the events comprising Defendants' fraudulent activities giving rise to the Plaintiff's claims occurred in the Eastern District of Missouri and within the District of Columbia in Washington, D.C., and the Defendant (U.S.) Agents and Agencies acted in concert with private entities and state actors within the State of Missouri in facilitating the physical and electronic surveillance of the Plaintiff (Johnson).

## THE DEFENDANTS CITED IN PLAINTIFF'S BRIEF

14. Defendant (Presidents) principal place of residence is the White House 1600 Pennsylvania Ave, in Washington, D.C., They serve as Chief Executive and as the Chief Law Enforcement officer of the (U.S.) and acts as Supervisor over heads of department of the Executive Branch of the government under and is charged with protecting, defending and enforcement of federal Laws and Constitution of the United States under Art. II powers.

15. Defendant (Justices of U.S. Supreme Court) principal office place is the U.S. Supreme Court Building, 1 First Street N.E., in Washington, D.C., the Defendant (Justices) serve as

interpreters of the Constitution and laws enacted by the Congress, They are assigned to sit s Associate Justices or Chief Justice over the various district court circuit, and act as Supervisors over the employees that work in the Courts of the United States, They enact the Rules of Civil, Criminal and Appellate Procedures that governs the procedures within the Courts of the United States pursuant to Art. III powers.

16. Defendant (Congress) constitutes two Chambers the House of Representatives and Senate both are located in the U.S. Capitol Building, East Capitol Street, N.E. And 1st Street, N.E., in Washington, D.C. They (Representatives and Senators) enact the federal Laws of the United States, They enact Bills of appropriations for the administration of Agencies of the (U.S.) and for services provided by the (3) separate Branches of the (U.S. government), They are charged by constitutional authority as a check on the powers of the Executive and Judicial branches of the (U.S. government) in lieu of trial and impeachment authority, and has authority to pay "debts" incurred by the (U.S.) under Art I powers.

17. Defendants (Presidents, Justices, Representatives and Senator), They are constitutional office Holder charged under federal law and the Constitution to see that the laws of the (U.S.) are executed within the several States and territories of the United States. They are principals culpably liable to acts committed by employees of the United States within the district court by Defendants, Magistrate Frederick R. Buckles, District Judge Jean C. Hamilton, Chief Judge Edward L. Filippine, Chief Judge Catherine D. Perry, District Judge Charles A. Shaw, Magistrate Mary Ann L. Medler, and Clerk Michael Gans, of the District Court for the Eastern District of Missouri at the U.S. Courthouse located at 111 South Tenth Street in the City of St. Louis, Missouri. The aforementioned Judges previously were assigned this action from 1989-1991 and entered a total of five orders denying redress to the Plaintiff.

* Defendant Chief Judge Edward L. Filippine of the District Court in 1991 is personally responsible for impersonating the office of the Chief Judge of the Court of Appeals for the Eighth Circuit, He entered orders to deny to the Plaintiff's petition under Seal of the District Court of Appeals, whereas the Chief Judge of the Court of Appeals in 1991 was Chief Judge Donald Lay.

* Defendant Chief Judge Edward L. Filippine in 1991 allowed the Defendant James A. Pudlowski, the Chief Judge of the Missouri Court of Appeals in 1989 to impersonate the office of a federal Magistrate the Defendant Pudlowski entered one order in 1989 to deny the Plaintiff redress under the Seal of the District Court of the Eighth Circuit, He also entered an order in 1988 as Chief Judge of the Missouri Court of Appeals when his principal office was located at 815 Olive in the City of St. Louis, Missouri, to deny the Plaintiff a review of acts committed by state actors with a private litigant the Defendant, Julius H. berg & Associates in the defrauding of the plaintiff's estate.

18. Defendants Unknown (Federal FISC and Court of Review Judges), They were not disclosed whereas the Defendant (federal Courts) cited herein and in the supporting Brief conspired to keep secret the identity of federal Judges and the locations of the U.S. Courthouses responsible for granting/authorizing or extending applications for 215 FISA or Fourth Amendment warrants. The Eleven Judges of the FISA Court meet at the Dept. of Justice 950 Pennsylvania Ave., N.W., in Washington, D.C.

6

19. Defendant Director James C. Duff and for his predecessors whose principal office is located in the Administrative Office of the United States Courts, One Columbus Circle, N.E., in Washington, D.C., The Director is appointed by the Chief Justice of the U.S. Supreme Court and is a recipient of Annual FISA Reports relative to the intercept program executed by the (CIA) and (NSA), He was responsible for the noncompliance with the Plaintiff's request for information under the FOIA, Privacy Act 5, sec. 552(a), He acted in support of the secrecy authorized by a succession of Chief Justices i.e. William H. Rehnquist and John G. Roberts, Jr.

20. Defendants a succession of Attorney Generals, Edwin Meese, Richard Thornburgh, William Barr, Janet Reno, John D. Ashcroft, Alberto Gonzales, Michael Mukasey and Eric H. Holder, Jr., whose principal office is located in the Department of Justice 950 Pennsylvania Ave, N.W. in Washington, D.C., They serve as the chief law enforcement officers for the federal government. Since 1988 to the present, They and the Department of Justice were charged under the Judiciary Act of 1789 ch. 20, 1 Stat. 73-93 and the act of June 22, 1870 28 U.S.C. 501, 503, 509 to be the principal Agents and Agency authorized by Statute enacted by the Congress to enforce federal Laws in the protection of the Plaintiff's civil rights, and for the criminal prosecution of persons having violated federal Laws in the commission of offenses cited in this Complaint and supporting Brief.

  * Defendants Attorney General had investigative authority over conduct authorized by the White House in 1988-present and that acts executed by and/or supervised by the Defendant Directors of the (CIA) William H. Webster, Robert M. Gates, R. James Woolsey, John M. Deutch, George J. Tenet, Porter Goss and Leon Panetta, They were charged with intercepting foreign intelligence operating out of the Central Intelligence Agency Headquarters the George Bush Center for Intelligence, George Washington Memorial Parkway, in Langley Virginia, Fairfax County.

  * Defendants a succession of Directors of the (FBI) William S. Session, Louis Freeh and Robert S. Mueller from 1988-present, They and the Federal Bureau located in the J. Edgar Hoover Building, 935 Pennsylvania Ave. N.W., in Washington, D.C. the Agency having sole authority inside the United States to exercise "police powers" to secure warrants requesting authorization to implement surveillances against U.S. citizens, and on various occasions Agents of the (FBI) did interact with Agents of the (CIA) and (NSA) in facilitating the unlawful exercising of "police powers" by the Central Intelligence Agency unlawfully inside the (U.S.).

  * Defendants a succession of Secretaries of the Department of Defense (DOD), Frank C. Carlucci, Richard B. Cheney, Leslie Aspin Jr., William J. Perry, William S. Cohen, Donald H. Rumsfeld and Robert M. Gates in lieu the Defense Intelligence Agency, operating out of the Headquarters for the Department of Defense the Pentagon located at Army Navy Drive & Fern Street in Arlington Virginia, from 1988-present, They afforded the (CIA) the use of military satellites to track the movements of U.S. citizens resulting from tracking devices inserted by the (CIA) and the (FBI) into private automobiles belonging to the Plaintiff (Johnson, et al).

\* Defendants a succession of Directors of the National Security Agency (NSA) LTG. William Odom, VADM. William Studeman, VADM. John M. McConnell, Lt. Gen. Kenneth Minihan, Lt. Gen. Michael Hayden and Keith B. Alexander having the Headquarters for the (NSA) located on Route 32 Baltimore/Washington Parkway on is known as the grounds for Fort George G. Meade, in Maryland, from 1988-present They assisted the (CIA) in the exercising of unlawful "police power" inside the (U.S.) by an intercept program involving the intercept of the Plaintiff (Johnson, et al) cell phone and land based telephone communications acting, with the (NSA) acting in concert with the (FBI) the principal Agency responsible for capturing the oral communications of U.S. persons gathered electronically and captured under roving wiretaps being exercised against the Plaintiff, the plaintiff's children and Unknown persons known to associate with the Plaintiff (Johnson, et al).

21. Defendants a succession of Postmaster Generals, Anthony M. Frank and John E. Potter having their principal office located in the USPC Building, 475 L'Enfant Plaza S.W., in Washington, D.C., They from 1989-present to assist the (U.S. government) in the intercept program starting with Postmaster General Frank "privilege" mail deposited by the Plaintiff's Counsel in the U.S. mail was seized by employees Defendant Unknown under the supervision of the Postmaster General, mail that was directed to a federal Court of the United States addressed to Chief Judge Donald Lay of the Court of Appeals for the Eighth Circuit was redirected to Chief Judge Edward L. Filippine of the District Court of the Eighth Circuit by postal employees at the Frederick N. Weathers Station Post Office located at 3415 N. Kingshighway, City of St. Louis, in Missouri.

22. Defendants Unknown federal employees of the (CIA), (NSA), (FBI), (DOD), Operatives and Contractors employed by the United States to execute and/or to help in the facilitation of the illegal domestic surveillance executed against U.S. Person in lieu of physical surveillances, housebreaking, planting of electronic eavesdropping equipment and/or tracking devices, and wiretapping instruments from 1988-present, They have acted under cover of secrecy employed by the Defendant Chief Executives of the (U.S.) and their concealment from discovery process with the assistance of the federal Judiciary cited herein and in the Plaintiff's supporting Brief.

23. Defendants Governors of the State of Missouri John D. Ashcroft, Mel Carnahan, Roger Wilson, Bob Holden, Matt Blunt and Jeremiah W. Nixon having their principal State office located in the State Capitol Building, 201 W. Capitol Ave, Jefferson City, in Missouri, from 1988-present as custodians of the laws of the State of Missouri, They did have knowledge that the (CIA) was exercising unlawful "police powers" within the State of Missouri against citizens of State of Missouri, and in particular They had knowledge and acted in concert with the Defendant (U.S.) in executing a electronic eavesdropping on "privilege" communication between the Plaintiff Jerry A. Johnson and his Counsel Joseph Johnson while the Plaintiff Jerry A. Johnson was in the custody of the Department of Mental Health located at 4200 Arsenal Street., City of St. Louis, in Missouri.

8

24. Defendants Judges of the Missouri Supreme Court Judge Warren Dee Welliver, Judge Andrew J. Higgins, Judge William H. Billings, Judge Charles B. Blackmar, Judge Edward D. Robertson, Jr., Judge Ann K. Covington and Judge John C. Holstein having the Supreme Court Building located at 207 W. High Street, Jefferson City, Missouri, They in 1988 as custodians of the laws of the State of Missouri had knowledge a state actors Defendant Judge Thomas M. O'Shea, Probate Division, had granted a private litigant the Defendant Law Firm Julius H. Berg & Associates a "change of judge" from the Probate Division to the State Circuit Court in violation of the Missouri Rules of Civil Procedures, They also had knowledge the Defendant Presiding Judge Brendan R. Ryan, of the Circuit Court allowed the Defendant Julius Berg & Associate to issue a summons to 3rd party heirs that violated the Probate Code, They also had knowledge that the Defendant Julius Berg & Associates did not file a complaint with the Clerk of the Circuit Court as required under the Missouri Rules of Civil Procedures, They also had knowledge that the Defendants Judge Nichols, now Deceased, and Judge Thomas O'Shea of the Probate Division failed to transfer "absolute property rights" to the Plaintiff Vandelia W. Johnson, upon her death on the 3rd day of March in 1988 as required under the Probate Code.

   * Defendants Judges of the Missouri Supreme Court as Supervisor over the employees assigned to the lower State Court in reference to the Defendant Freeman R. Bosley, Jr., Clerk of the Circuit Court, 22nd Judicial Circuit, City of St. Louis, having his office located State Circuit Court Building, 110 N. Tucker, City of St. Louis, in Missouri, in 1988 He failed to require that the Defendant Julius Berg & Associates file a complaint prior to commencing the action Berg v. Estate of P.D. Johnson in the State Circuit Court. The Defendant Clerk Bosley disregarded his duties and extended a favor to the Defendant Julius Berg & Associate by not requiring that a complaint be filed so that he could assign a case number to the the action in order to commence the proceedings in the Circuit Court, Division 1, before the Defendant Presiding Judge Brendan R. Ryan, the Defendant Clerk Bosley allowed the Defendant Julius Berg & Associates to use the case number assigned to the estate of the Plaintiff, the Decedent P.D. Johnson # 3-87-0974-P-D during the proceeding in the Circuit Court, Division 1.

   * Defendants Judges of the Missouri Supreme Court as Supervisor over the Judges of the lower State Courts, in 1988 They knew that the Defendant Chief Judge James A. Pudlowski, of the Missouri Court of Appeals for the Eastern District, City of St. Louis was an employee of the State of Missouri in 1989 at the time, He impersonated the office of a federal Magistrate i.e. "actus reus" making the Court en banc defacto accessories for failing to prevent an official misconduct by a state judge.

25. Defendants Attorney Generals of the State of Missouri William L. Webster, Jeremiah W. Nixon and Chris Koster as custodians of the laws of the State of Missouri having their principal State office located in the Supreme Court Building, 207 W. High Street, Jefferson City, in Missouri, from 1988-present They had knowledge that the Defendant (U.S.) was implementing an illegal domestic surveillance within the State of Missouri by the (CIA) exercising "police powers" inside the United States against citizens of the State of Missouri. They had knowledge as the Chief law Enforcement official that Public Official of the State of Missouri were assisting the (CIA) in monitoring privileged communications between the Plaintiff Jerry A Johnson and his Counsel Joseph Johnson at the time he was in the custody

of the Missouri Department of Mental Health at 4200 Arsenal St., City of St. Louis, They also knew that the monitoring of the Plaintiff Jerry A. Johnson's conversations with his Counsel was ongoing at the time of the Plaintiff's conditional release by the State of Missouri at his residence at 2047 Maury Street, City of St. Louis, in Missouri.

34. Defendant the Missouri Legislature constituting both a House of Representatives and State Senate having their principal office seats located in the State Capitol Building, 207 W. High Street, Jefferson City, in Missouri. They committed acts in furtherance of the State action to suppress the civil rights of the Plaintiffs by the judicial and executive branches of the State government of Missouri. The Legislators "after the fact" sought and did enact ex post facto law a constitutional tort violation by revising prior State law governing the transfer of "absolute property rights" in the Plaintiff's case to the Deceased, Administrator Vandelia W. Johnson from the Decedent, P.D. Johnson under the Probate Code in 1988. To a revision under the Probate Code voiding the prior provision of "absolute property transfer" to the Deceased party the "property right" reverts back of the Decedent who preceded the Deceased party's in death; and voided the right of the 3rd party children to a lawful succession of entitlement from the Plaintiff, Vandelia W. Johnson. The Missouri Legislature had four reasons for the revision made to the Probate Code.

* First, the Legislature en banc in 1988 up to time of the settlement of the estate of P.D. Johnson in 1996, the State representatives knew the Defendants Judge Nichols, Judge Thomas O'Shea, Judge Michael B. Calvin, Judge Mary K. Hoff, Chief Judge Brendan Ryan, and Chief Judge James A. Pudlowski all acted within the jurisdiction of the Probate Division or entered orders directly having an impact upon "absolute property right" denied the Plaintiff Vandelia W. Johnson as Wife and Administrator, lawfully owed to Her at the time of her death on the 3rd day of March 1988 according to the Probate Code in 1988. Thus, the State representatives amend the Probate Code in a scheme to prevent civil culpability in the denial of the Plaintiff Vandelia W. Johnson's right to the equal protection and due process of law guaranteed to every citizen born in the United States residing within the State of Missouri.

* Second, the Legislature en banc in 1988 – 1996 knew that the Department of Social Service's claim against the Decedent P.D. Johnson was made "moot" according to the Probate Code provision allowing for "absolute transfer of property" rights from the Decedent P.D. to his Wife and estate's Administrator Vandelia W. Johnson. The Missouri Legislature by revising the Probate Code "after the fact" sought to give the Defendants Attorney D.B. Kammerer, Attorney John J. Satry, Attorney Linda Ray-McKenna and Attorney Michael S. Kisling cover for continuing to pursue a "debt" against the Decedent P.D. Johnson that was "null and void" effective the 3rd day of March 1988. They, as attorneys for the Department of Social Services practicing in the area of Probate law knew or recklessly disregarded material facts under the Probate Code in order to collect moneys by fraud from the Plaintiffs to the benefit of the State coffers.

* Third, the Legislature en banc in 1989 knew that Chief Judge James A. Pudlowski of the Missouri Court of Appeals, had already acted to conceal the defrauding of

10

the estate under a frivolous suit before the Circuit Court in re Julius H. Berg & Associates v. Estate of P.D. Johnson, when He, Chief Judge James A. Pudlowski denied the Plaintiff's appeal for review contesting according the allegations set forth in this Complaint. Chief Judge did not reveal himself to the Plaintiff's Counsel for Judge Pudlowski did not issue a written order under his signature as required in a holding set by the Missouri Supreme Court. The Missouri Legislature knew that Chief Judge James A. Pudlowski resurfaced for a second time, but this time impersonating a federal Magistrate in His continuing effect to attempt to contain the knowledge of the fraud against the estate, the denial of "absolute property rights" retained by the Plaintiff Vandelia W. Johnson, and the frivolous suit filed against 3rd party heirs in a scheme concealed under Berg & Associates v. P.D. Johnson.

* Four, the Legislature en banc knew the proceeding in the Probate Division had has embarked upon violating the prohibition under the Missouri Constitution and the U.S. Constitution provisions prohibiting the State from impairing the "obligation of contracts". Whereas, the Probate Division after having dismissed the Defendant Rita J. Johnson the court employed the service of the Defendant Mark L. Ostenfeld as Public Administrator over the order of succession in lieu of contractual obligation set by the Plaintiffs. The Missouri Legislature by 1992 was fully in the loop having access to disclosed intercepted communication supplied by the Defendant U.S. to the appropriate Public Officials within the executive and judicial branches of State government. They, meaning the office of the Governor, the office of the State Attorney General, Judges of the Missouri Supreme and Missouri Legislature would collectively have known of the contractual order of succession relating to the estate's representative, and the contractual employment of Plaintiff's Counsel as "next friend". The reckless and arbitrary position taken by the Defendant (et al) was based upon a consistent theme in most frauds, and that is the persons who are subjects of the fraudulent activities will never be able to figure out all the twist and turns of the conspiracy.

35. Defendant V Clyde Cahill & Partnership having their last known principal place of business was located in the Frisco Building at 906 Olive Street Suite 1250, City of St. Louis, in Missouri, They the Law Firm was not contractually obligated to the estate of the Decedent P.D. Johnson, the Deceased Administrator Vandelia W. Johnson, nor was the Law Firm contracted by the majority-withstanding in lieu of 3rd party Heirs, and the Law Firm's appearance before the Probate Division in 1990 was an impairment and infringement upon the contractual obligations between the Plaintiff 3rd party Heirs and Counsel as "next friend".

36. Defendant Farrel, Hummel, and Constance having their last known principal place of business was located in the Laclede Gas Building, 720 Olive Street Suite 2202, in the City of St. Louis, in Missouri, They the Law Firm was not contractually obligated to the estate of the Decedent P.D. Johnson, the Deceased Administrator Vandelia W. Johnson, nor was the Law Firm contracted by the majority-withstanding in lieu of 3rd party Heirs, and the Law Firm's appearance before the Probate Division in 1996 the appearance was an impairment infringement upon the contractual obligations between the Plaintiff 3rd

11

party Heirs and Counsel as "next friend".

37. Defendant Julius H. Berg & Associates in 1988 having their last known place of business located at 7777 Bonhomme Ave. Suite 2222, City of Clayton, in Missouri, They the Law Firm was contacted by the Plaintiff Vandelia W. Johnson in the year 1987 in a related Probate case involving the estate of P.D. Johnson # 3-87-0974-P-D. After the death of his client Plaintiff Vandelia W. Johnson in 1988 the Defendant Berg & Associates devised a scheme with the now deceased Defendant Judge Nichols and initially with employee Defendant Attorney D.B. Kammerer of the Missouri Department of Social Services that involved an attempt to defraud the Decedent's estate in lieu of "theft" as cited in the Plaintiff's Brief. Once confronted with the allegation of attempted theft of estate funds by scheme the Defendant Berg & Associates petitioned the judge of the Probate Division the successor Defendant Judge Thomas O'Shea for a "change of judge" Thus, displaying a "guilty mind" mens rea and the judge of the Probate Division in granting the illegal "change of judge" which he was not required to do legally committed an act of "official misconduct" for the granting of change was in violation of the Missouri Rules of Civil Procedure in 1988.

38. Defendant Berg & Associates knew that the contract with the Plaintiff Vandelia W. survived upon her death according to Revised Statute of Missouri before the Probate Division; but in violation of the Probate Code in 1988 prohibiting the involvement of 3rd party children in litigation while the estate's bond was pending in the Probate Division, They meaning Berg & Associates filed suit in the State Circuit Court by issuing a Notice of Hearing i.e. summons to the estate 3rd party Representative in a cause of action Berg v. Estate of P.D. Johnson. In proceeding before the Defendant Presiding Judge, Brendan Ryan, Division 1, the Defendant judge granted the Defendant Berg & Associates consent to withdraw, attorney fee and cost in the amount totaling **$1,943.75.** Defendants Berg & Associates and Judge Brendan Ryan in a proceeding involving an illegal change of judge and venue the Defendant Berg & Associates were allowed to breach their surviving contractual obligation in a scheme involving a petition to withdraw.

39. **Estate Assets.** The estate of the Decedent P.D. Johnson prior to the death of his Wife and Administrator the Plaintiff Vandelia W. Johnson had assets in the amount of **$17,437.46.** At the time of the death of the Plaintiff Vandelia W. Johnson in 1988 according to the "absolute property right" provision under the Probate Code the **$17,437.46** in estate # 3-87-0974-P-D absolutely belonged to the Plaintiff Vandelia W. Johnson, but had yet to be transferred to an estate in her own name prior to the Defendant Berg & Associates filing suit in the name of the Decedent P.D. Johnson who did not have any contractually obligations with the Defendant Berg & Associates.

40. Defendant Rita J. Johnson, Administrator, Relieved, having her principal place of residence at 3952 Olive Apt. F, City of St. Louis, in Missouri, in 1988 was under contractual obligation. First, to the Plaintiff 3rd party Heir in lieu of contract i.e. Family Agreement stipulated to by all eight surviving children, Second to the Plaintiff the deceased Administrator Vandelia W. Johnson as successor as appointed by majority-withstanding, and third to the Decedent P.D. Johnson prior to removal in 1989.

41. Defendant Rita J. Johnson breached her contractual obligations by misappropriating moneys allocated for defense of the estate converting said funds for her personal use.

42. Defendant Jennifer M. Joyce, Circuit Attorney, having her office located in the Mel Carnahan Building, 1114 Market Street Room 401, City of St. Louis, in Missouri, as Circuit Attorney She is charged to investigate and to prosecute individuals responsible for committing criminal offense violating the Criminal Code of Missouri within the jurisdiction of the City of St. Louis. She, over twenty years from 1988-present would have been privy to information gathered and distributed by the Defendant (U.S.); or She retained first or second hand knowledge outlining the activities committed by Defendant (et al), or She retained knowledge as to any City employees i.e. Defendants, Unknown Law Enforcement Officers employed to assist in the domestic surveillance program in the criminal facilitation of acts cited in the foregoing and noted in the Plaintiff's Brief. A substantial part of events comprising Defendants' fraudulent activities within the various State courts, acts of house breaking, and surveillance activities conducted by the ("CIA") and ("NSA") occurred within the City of St. Louis.

43. Defendant Robert P. McCulloch, Prosecuting Attorney, having his office located at 100 South Central Ave., 2nd Floor, City of Clayton, in Missouri, as Prosecuting Attorney He is charged to investigate and to prosecute individuals responsible for committing criminal offenses violating the Criminal Code of Missouri within the jurisdiction of St. Louis County. He, over twenty years from 1988-present would have been privy to information gathered and distributed by the Defendant (U.S.); or He retained first or second hand knowledge outlining the activities committed by Defendant (et al), or He retained knowledge as to any County employees i.e. Defendant, Unknown Law Enforcement Officers employed to assist in the domestic surveillance program in the criminal facilitation of acts cited in the foregoing and noted in the Plaintiff's Brief. A substantial part of events comprising Defendants' acts of house breaking, and eavesdropping activities conducted by the ("CIA") and ("NSA") occurred within St. Louis County.

44. Defendant Dr. Michael Graham, Coroner, for the City of St. Louis in 1988 now a Professor of Pathology at St. Louis University School of Medicine, located in the DuBourgh Hall Building, Room 119 One Grand Blvd, City of St. Louis, in Missouri, as the Coroner for the City of St. Louis in 1988 He was charged with the investigation of suspicious deaths that occur within the City of St. Louis. He was notified by the Plaintiff in 1988 that Defendant Lois K. Hess, Records Officer, for St. Louis University Hospital had provided the Plaintiff with two Autopsy Reports (1) listing that the cause of death of the Plaintiff Vandelia W. Johnson at St. Louis University Hospital in 1988 could not be determined a suspicious death , (2) that a Defendant Unknown Pathologist had performed an autopsy that was not authorized by the Plaintiff (et al), and (3) the Defendant St. Louis University Hospital had stolen and retained possession of the Plaintiff's brain.

45. Defendant Dr. Michael Graham in a "quid pro quo" for not investigating the suspicious death of the Plaintiff at St. Louis University Hospital in 1988 as Coroner, the Defendant Dr. Graham was subsequently rewarded with a professorship by the St. Louis

13

University School of Medicine a subsidiary of St. Louis University Hospital located at 3635 Vista Ave., City of St. Louis, in Missouri.

46. "Material Witness Defendant Lois K. Hess, Records Officer, in 1988 having her principal office located at St. Louis University Hospital, 3635 Vista Ave, City of St. Louis, in Missouri, She furnished the Plaintiff with two Autopsy Reports during a meeting held in her office in and/or around May of 1988. She informed the Plaintiffs Jeffrey L.G. Johnson and Joseph Johnson that in the first Autopsy Report the cause of death of the Plaintiff Vandelia W. Johnson was undetermined, and when informed by the Plaintiff of the intent to have an independent autopsy done She printed out a second Autopsy Report noted as ADDENDUM; but the only difference between the first and second Autopsy Reports was that in the ADDENDUM the Plaintiff's stolen brain was noted therein.

47. Defendant Unknown Pathologist in 1988 having performed an unauthorized autopsy on the Plaintiff as an employee of St. Louis University Hospital his primary place of employment was located at 3635 Vista Ave., City of St. Louis, in Missouri, He performed an unauthorized "medical procedure" on the body of the Plaintiff Vandelia W. Johnson and committed a "theft" of a body part on behalf of his employer an institution that serves both as a teaching hospital and medical facility.

48. Now deceased Defendant Dr. Donati, Attending Physician, a employee of the Defendant St. Louis University Hospital in 1988 having his primary place of employment located at 3635 Vista Ave., City of St. Louis, in Missouri, as the attending Physician He after having misdiagnosed the Plaintiff's medical condition his prescribed line of treatment subsequently caused the death of the Plaintiff Vandelia W. Johnson in 1988.

49. Defendant, St. Louis University Hospital, a subsidiary of St. Louis University School of Medicine in 1988 was a corporate entity of the Catholic Church having its Headquarters located in Vatican City, Rome, in Italy. Is the "joint principal" culpably liable for the conduct of its corporate officers, employees and contractor providing services to the general public (1) as a "for profit" entity, and (2) as a City State under international law could be held liable for offenses amounting to human rights violation committed against the Plaintiff Vandelia W. Johnson. Whereas, the Defendant St. Louis University Hospital in lieu of its corporate ownership knew or should have known of the death of the Plaintiff, and also would have known that in the hospital's records there was evidence of a criminal offense involving a theft of a "human organ" the property of another. Defendant was reckless and disregarded facts over twenty one years in failing to address the offenses committed against the Plaintiff Vandelia W. Johnson.

50. Defendants Corporations, Companies, and Banking Institutions known and unknown as listed in the Plaintiff's supporting Brief are retained pending discovery as having acted assisting the Defendant (U.S.) in the execution of said surveillance i.e. eavesdropping and intercept program executed by the (CIA) and (NSA); or assisted the aforementioned Agencies in the electronic monitoring of the Plaintiff banking and saving accounts from 1988-present.

14

51. Defendant, Unknown not heretofore having been cited are subject to discovery subject to the roles they played acting in furtherance of the criminal enterprise authorized by the Defendant (U.S.).

## RELEVANT INDIVIDUALS AND ENTITIES

52. Barack H. Obama, is a resident of Washington, D.C. and is the current President of the United States. He is the Chief Law Enforcement constitutional officer having been sworn in as the 44th President of the United States on the 20th day of January 2009 having taken the following oath of office administered by the Defendant Chief Justice John G. Roberts, Jr. He stated "...I, Barack Hussein Obama...I do solemnly swear...that I will faithfully execute the office of President of the United States, and will to the best of ability preserve, protect, and defend the Constitution of the United States." "So help me God". Is assuming the office of the Presidency the Constitution inferred upon Him that "...he shall take care that the laws be faithfully executed" and he commissions those heads of departments under his supervision to do the same. From January of 2009 to the present He has failed to order heads of departments under his supervision to cease and desist the illegal activities authorized and continued by his predecessors.

53. Eric H. Holder, Jr., is a resident of Washington, D.C. and is the current Attorney General of the United States. He is the Chief Law Enforcement officer for the federal government and is the current 82nd Attorney General having been sworn in on the 3rd day of February 2009. He heads the Department of Justice and also swore an oath to faithfully enforce the laws of the United States as enacted by the Congress and the Constitution. He had the responsibility to provide to the President his opinion on the legality of the continuing acts as related to the (CIA) exercising "police powers" inside the United States in violation of the National Security Act of 1947, and as Attorney General he could have directed employees under his supervision to cease and desist said illegal domestic surveillance; or He could have filed a criminal complaint against those independent Agencies under his investigative authority pursuant to the 1986 Act 18 U.S.C. sec. 2521 to initiate civil proceedings in the district court of jurisdiction to seek a permanent restraining order to cease and desist against the (CIA) and (NSA); but the Attorney General under the administration of the Defendant President Barack H. Obama has continued to exercise the unlawful activity authorized and continued by their predecessors since 1988-present.

54. William G. Stewart II, Assistant Director, U.S. Department of Justice, Executive Office for United States Attorneys ("EOUSA") in two letters dated the 23rd day of July 2009 and the 24th day of February 2010, He informed the Plaintiff's Counsel that the (CIA) and the (NSA) respectively were the Agencies of the Defendant (U.S. government) having gathered the information seized under the domestic surveillance, and that the material seized was in the sole custody of the (CIA) and (NSA). Which affirmed the allegations raised by the Plaintiff (Johnson, et al) in their original petition to the District Court of the Eighth Circuit and U.S. Supreme Court in 1989-2009 alleging the existence of a surveillance program against the Plaintiff by the United States government commenced in 1988.

55. Kenneth W. Starr, Solicitor General of the United States in 1991, Who on the 16th day of December 1991 "post" proceeding before the District Court of the Eighth Circuit, and "post" notice of filing of Johnson, et al v. United States, et al by Clerk Suter of the Supreme Court, the Solicitor General executed a "waiver" without the service of a counterclaim Rule 13(a)(1) Fed. R. Civ. P., addressing the allegations of the existence of said domestic surveillance alleged in the Plaintiff's petition submitted to the Supreme Court noted as filed and set for hearing by the Court in lieu of a letter under the "seal'" of the United States and signature of the Clerk of the Supreme Court.

56. Frederick R. Buckles, Magistrate Eighth Circuit in 1989 initiated the interaction between the State Courts of Missouri and the District Court, for his part he provided the Plaintiff with U.S. Marshall forms in order to list the names of Defendants and requested that the forms be returned to him at the district court, and once the U.S. Marshall forms were filled out and returned Magistrate Buckles silently "recused" opening the door for the Defendant James A. Pudlowski to assume his duties as Magistrate over Johnson, et al v. United States, et al..

57. James A. Pudlowski, Chief Judge of the Missouri Court of Appeals in 1989, Who in 1989 impersonated the office of a federal Magistrate which is the link in the "chain conspiracy" to deny civil rights between the State Courts of Missouri, United States District Court of the Eighth Circuit in Missouri, and U.S. Supreme Court.

 * Defendant Jean C. Hamilton, District Judge Eighth Circuit in 1989 had the first opportunity to prevent the deprivation of the Plaintiff's civil rights by James A. Pudlowski impersonating the office of a federal Magistrate; but she acted infurthernace of the fraud by Judge Pudlowski by entering an order to deny redress "post" actions by Judge Pudlowski.

58. Edward L. Filippine, Chief Judge, District Court Eighth Circuit in 1989-1991, Who allowed James A. Pudlowski to impersonate a federal Magistrate in 1989, and He meaning Judge Filippine having impersonated the office of Chief Judge of the Court of Appeals in 1991 having concealed from the Plaintiff in 1991 that James A. Pudlowski was not a federal Magistrate in 1989.

59. "Material Witness" Royce C. Lamberth, Chief Judge District Court for the District of Columbia, under discovery to disclose (1) when did he first retain knowledge of the existence qf; or was provided information gathered under the surveillance program, (2) as the Assigning Judge of the district court have there been any secret proceedings or pleadings filed in the district court under his tenure by any attorney for the United States related to Johnson, et al v. United States, et al inclusive to mean any secret proceedings or pleading filed relating to any of the following Plaintiffs P.D. Johnson, Vandelia W. Johnson, John H. Johnson, Lona J. Johnson aka Lona J. Moore, Clyde J. Johnson, David J. Johnson, Jerry A. Johnson, Jeffrey L.G. Johnson, Joseph Johnson, and Unknown Plaintiff(s), or relating to any action filed on behalf of the aforementioned by Counsel as "next friend" in any Court of the United States contested by any Counsel of record for the Defendant United States; or any stealth pleadings filed by the United States before the District Court citing national security, executive privilege or state secrets by any President cited herein.

16

     * "Material Witness" Angela Caesar, Clerk for the District Court for the District of Columbia under discovery to produce any and all records, documents, orders, pleadings, etc contained in the district court's records kept pursuant to Rules 77 and 79 Fed. R.Civ.P. relating to line no. 59 addressing "material witness" Judge Lamberth. In order to address the Plaintiff's right to an impartial jurist guaranteed under the Fourteenth Amendment.

## FACTS

### A.    President Obama Controlled The Department of Justice And Appointed The Attorney General And They Both Failed To Prevent The Further Deprivation Of The Plaintiff's Civil Rights

  60. For more than twenty years, the Defendant (et al) facilitated a secret illegal domestic domestic surveillance, and sought to conceal the acts and the part played all three branches of the (U.S. government), and the federal Courts, in effect, acting as the buffer between concealment and disclosure. The (U.S. government) hid their criminal enterprise within the legal and administrative process of the federal judiciary by design. In order to hide the nature and extent of the conspiracy from the American public.

  61. Chief Justice John G. Roberts, Jr., played it loose with the Rule Enabling authority of the Supreme Court and as supervisor over the Judicial Conference of the United States. Upon assuming the office of Chief Justice in 2005, He orchestrated a scheme to retrospectively change the Rules of the Supreme Court in 2007 so that the Defendant Clerk William K. Suter under Rule 1 Sup. Ct. R. as a non-constitutional officer could arbitrarily refuse to file any papers that did not conforms to the rules of the Court, contrary to the Judiciary Act of September 24, 1789 sec. 342 First Congress, Session 1, ch. 20 1789 stating in pertinent part: that "...[d]eclarations submitted to Courts of the United States could not be squashed, abated or arrested for want of form..." with emphasis added. The actions undertaken by the Chief Justice and the Clerk were attempts to prevent Plaintiff's Counsel as "Next Friend" from filing any papers to supplement the papers filed by Clerk Suter in 1991 in re to Johnson, et al v. United States, et al noted as filed and set for hearing by the Supreme Court in 1991 in lieu of "notice letter " from Clerk Suter under the "seal" of the U.S. Supreme Court.

  62. The Congress acted to cultivate an era of manipulation of the federal Laws by enacting ex post facto laws and bills of attainders as to attempt to improve the position of employees of the (U.S. government) previously retained under the U.S. Criminal Code at the time of criminal admission under "waiver" dated the 16th day of December 1991. While at the same time the judiciary Committee of the House of Representatives was working with the Chief Justice John G. Robert, Jr., and the Judicial Conference to change several provisions under the Federal Rules of Civil Procedure to afford the Defendant (U.S.) to be able to file a counterclaim "after the fact" after the office of United States Attorney in the City of St. Louis in 1989 having omitted to file a counterclaim during the proceedings in the Eight Circuit, and within sixty days of the Plaintiff's Complaint being filed and set for hearing by the Supreme Court in 1991.

63. In addition to the active steps being undertaken by both the Chief Justice in 2007 to revise the Rule of the Supreme Court and acting in concert with the Judicial Conference and the judiciary Committee of the House of Representatives to enact revisions to the Federal Rules of Civil Procedures, the federal Court were actively engaged in secret ex parte communications and proceedings with attorneys for the Defendant (U.S.), and the federal Court(s) in question attempted to keep the existence of the stealth proceedings and the orders entered during said hearing from being disclosed, They ordered that the Clerk of the Court not to execute service of the orders entered to the Plaintiff's Counsel.

64. Thus, by knowingly hiding the existence of stealth pleadings filed before the federal Court(s) by attorneys of the U.S. Department of Justice, and the Judge(s) in question failing to disclose the orders entered the Plaintiff's Counsel would not be able to scrutinize the actual ongoing relationship between the newly elected President Obama, Attorney General Eric H. Holder Jr., and the federal Courts in question under the supervision of Chief Justices William H. Rehnquist & John G. Roberts, Jr., allowing the (CIA) and (NSA) to continue the unlawfully surveillance and intercept program of the Plaintiff (Johnson, et al).

**B. Associate Justice Clarence Thomas as the Associate Justice Assigned The Eighth Circuit Knowingly Or Recklessly Disregarded Facts Clearly Showing The District Court Under His Supervision Was Engaging In Fraud Against The Plaintiff's Civil Rights, And Executing Fraudulent Conveyance Through The Use Of The U.S. Mail**

65. Associate Justice Clarence Thomas was sworn in as an Associate Justice on the 22nd day of October 1991 and was assigned as the Associate Justice over the Eighth Circuit, He was a member of the Court when the Plaintiff's Complaint was filed and set for hearing by the Court, and was a member of the Court at the time the Solicitor General, Kenneth W. Starr executed the "no contest waiver" on the 16th day of December 1991 to a action that arrived from the Eighth Circuit to which Associate Justice Thomas was assigned as the Associate Justice over in 1991.

66. Associate Justice Clarence Thomas from the time of his confirmation in July of of 1991 to being sworn as a member of the (U.S.) Supreme Court in October of 1991. First, He would have had first or second hand knowledge of the domestic surveillance in effect since 1988 having previously been a judge on the Court of Appeals for the District of Columbia. Second, Associate Justice Thomas upon reviewing of a action that arrived at the Court from the Eighth Circuit, He would have known the names and positions of the lower Court judges he was assigned as supervisor over. He would have known that James A. Pudlowski was not a federal Magistrate at the time James A. Pudlowski was noted as having signed one of the orders associated with the Eighth Circuit from 1989-1991. He, would have also known that Edward L. Filippine was not the Chief Judge of the District Court of Appeals for the Eighth Circuit as noted; but Edward L. Filippine was the Chief Judge of the District Court of the Eighth Circuit at the time He signed an order in 1991 indicated that He, Edward L. Filippine was Chief Judge of the Court of Appeals.

67. Associate Justice Thomas knowing or recklessly disregarded facts in 1991 that the Chief Judge of the Court of Appeals for the Eighth Circuit was Judge Donald Lay.

18

68. Associate Justice Thomas knowing or recklessly disregarded facts in 1991 that the lower District Court judges now under his supervision from 1989-1991 had engaged in a fraud against the Plaintiff's civil rights. First, with a state actor James A. Pudlowski who in 1989 was allowed to impersonate the office of a federal Magistrate by the then Chief Judge Edward L. Filippine. Second, that Chief Judge Edward L. Filippine subsequently impersonated the office of Chief Judge of the Court of Appeals for the Eighth Circuit, all of which were done under the "seal" of a Court of the United States. Associate Justice Thomas once was quoted as saying: "...Government cannot make us equal it can only recognize, respect, and protect us as equal before the law" end quote; but it is apparent that Associate Justice Thomas was not willing to practice what he preached according to his "textualist" approach in interpreting the Fourteenth Amendment, and the "law and equity Clause under Art. III of the Constitution.

69. As a result of the practices of the Eighth Circuit judges, Associate Justice Thomas knew or recklessly disregarded that the orders entered by the Eighth Circuit according to information submitted to the Supreme Court i.e. said orders being provided to the Court as Exhibits in 1991 were fraudulent. Associate Justice Thomas (on a backward looking basis) determined to do nothing as with other conspirators he was given assurances that impeachments and trial was off the table.

70. Over twenty years, all Defendants cited herein based upon the intercept program collectively at some point all Defendants would have received notice under disclosure from the Defendant (U.S.). The one element that binds all Defendants under the following Claims for Relief is "silence" on their part while silence "...which do not involve direct violations of the law, but which contributes to the commission of offenses are...in the same manner as direct violations..." U.S. Maselli, C.A. 6 (Ohio) 1976, 534 F.2d 1197.

## FIRST CLAIM FOR RELIEF

### Violations of Section 241 and Section 242 of Title 18
(Against all Defendants)
(Conspiring to violate civil rights)

71. Paragraphs 1 through 70 are realleged and incorporated by reference as if set forth fully herein.

72. From at least 1988 through June of 2010, the Defendants, have actively engaged in the intercept of private communication, by the use of the means and instruments of wire and wireless communication seized in one State and transferred to another State in the conducting of a criminal enterprise in interstate commerce or by the use of the mails and/or wires, directly and indirectly, have employed devices, scheme and artifices to defraud the Plaintiff.

73. The Defendants knew or were reckless in either not knowing of the criminal activity described above having taken place over twenty years.

74. By reason of the activities herein described, the Defendants have conspired to violated 18 U.S.C. sec. 241 and sec. 242.

## SECOND CLAIM FOR RELIEF

### Violation of Section 103 [50 U.S.C. 403](d)(1) Nat. Security Act
(Against all Defendants)
(Conspiring to violate civil rights)

75. Paragraphs 1 through 70 are realleged and incorporated by reference as if set forth fully herein.

76. From at least 1988 through June of 2010, the Defendants, collectively had knowledge that the (U.S.) was gathering information, the the use of means and instruments to collect information and communication to which the Plaintiff was associated, directly or indirectly the fraudulent activities. First, commenced in the State of Missouri in 1988 in reference to the estate of P.D. Johnson wherein Defendants obtained moneys belonging lawfully to another by means of fraud and untrue statements of material facts or omissions to state material facts necessary in order to make statements made to the trier of the fact to make an informed decision, resulting in transactions, practices or course of business by a party under contract enjoying special benefit by association which have operated as fraud and deceit to the harm of the interest of the Plaintiff. Second, the intercept program by the Defendant (U.S.) had exposed the intent to defraud in lieu of corruption of judicial power by a private litigant in a State action.

77. The Defendants (U.S.) having employed the intercept program based upon the solicitation of federal Public Officials in 1988 by Unknown Public Officials of the State of Missouri requesting an investigation of the Plaintiffs, resulting in the surveillance and eavesdropping practices employed. The Defendants knew, were reckless in not knowing, or should have known that the activities of state actors would also be intercepted under the surveillance program described above.

78. By reasons of the activities herein described, the Defendants collectively either being in agreement with launching the intercept program, having first or second hand knowledge of the eavesdropping program the Defendants have violated Section 103 [50 U.S.C. 403] (d)(1) of the National Security Act of 1947, Sec. [50 U.S.C. 413]9(b) & (50 U.S.C. 1807) of the National Security Act of 1947, and 50 U.S.C. sec. 403(a) of the CIA Act of 1949.

## THIRD CLAIM FOR RELIEF

### Violations of Aiding and Abetting Violation of Section 1520.[2] of Title 18
(Against U.S. Supreme Court en banc and Clerk)
(Conspiring to obstruct justice in the violation of civil rights)

79. Paragraphs 1 through 70 are realleged and incorporated by reference as if set forth fully herein.

80. From at least 1988 through June of 2010, the Defendants, collectively schemed directly or indirectly to conceal their part of the fraud against the Plaintiff by employing devices to outlast the ability of the Plaintiff to pursue redress within the State and Federal courts. Having engaged in the practice of deceit between state and federal actors in the execution of false representations in light of the circumstances under which they were made, as to obstruct justice by false execution of fraudulent orders wherein false assertions were made upon the office of judge of a Court of the United States, by the use of the means and instruments of interstate commerce or of the mails and/or wires in order to relay a false conveyance under the "seal" of the Federal court as to assume that the plaintiff would deem the same to be true and correct, not misleading, to the determent of the Plaintiff's civil rights.

81. By reasons of the activities herein described, the Defendants Judge Pudlowski, Judge Hamilton, Judge Filippine, Assoc. Justice Thomas, and Chief Justices Rehnquist and Roberts, Jr., aided and abetted in the violation of Section 1520.[2] of Title 18 having conspired to conceal fraud by court in the obstruct of justice and administration of federal laws and statutes of the United States under color of federal law.

82. In addition, from 1988 through 2010, the Defendant, Justice of the U.S. Supreme Court after having knowledge of the fraudulent conveyances orchestrated by state and federal actors, the Justices of the Supreme Court en banc in 1991 employed a notice letter affirming the Plaintiff's action was filed and set for hearing with the intent that the action would never be addressed. The execution of the "notice" under the seal of the office of the Clerk constituted deceit with the Justice aiding and abetting in mail fraud in violation of Section 1341 of Title 18, and the use of the wording "United States" and "seal" of the office of the Clerk in the facilitation to the act operated as a fraud and scheme upon the Plaintiff violating Section 1017 of Title 18, Section 709 of Title 18 and Section 713(a)(F) of Title 18.

83. By reason of the foregoing, and pursuant to Section 1520.[2] of Title 18, Defendants Justice en banc and the Clerk in 1991 aided and abetted in the furtherance of the conspiracy to violate the civil rights of the Plaintiffs having violated sec. 241 and sec. 242 of Title 18. Specifically, Defendants knowingly provided substantial assistance to other co-conspirator and in their own interest in concealing such violations "after the fact", having collectively in a meeting of minds from the onset in 1989 having known of the violation of 18 U.S.C. sec. 2510 et seq. of the Omnibus Crime Control & Safe Street Act of 1986, 18 U.S.C. S 1385 of the Posse Comitaus Act, and United States Signal Directive 18 (USSID 18) 1980.

## FOURTH CLAIM FOR RELIEF

**Aiding and Abetting Violation of Section 1981(b)(c) of the 1866 Civil Rights Act**
(Against Berg & Associate, Judge O'Shea, Judge Ryan, Judge Pudlowski,
Judge Filippine, Judge Hamilton, Judges Missouri Supreme Court
en banc and Justice of U.S. Supreme Court en banc)
(Julius H. Berg & Associates, Cahill & Partnership, Farrell Hummel, Constance
Attorneys at Law/Law Firms and Rita J. Johnson)
(Interfering with and impairing contractual obligations)

84. Paragraphs 1 through 70 are realleged and incorporated by reference as if set forth fully herein.

85. From at least 1988 through June of 2010, the Defendants, by practices, scheme, deceit, or other instruments executed by the Defendants by personal actions, in their official offices or by use of the mail and/or wire, directly and indirectly, have employed devices and artifices to obstruct the Plaintiff from exercising their contractual obligation to themselves and to the benefit of others deceased Plaintiffs.

86. The Defendants knew or were reckless in their willful intent to hinder and having sought to impair the enforcement of a contract.

87. By reason of the activities herein described, the Defendants have violated Section 1981(b)(c) of the Civil Rights Act of 1866.

## FIFTH CLAIM FOR RELIEF

**Aiding and Abetting Violation of Section 1001(2)(3) of Title 18**
(Against Judge Buckles, Judge Pudlowski, Judge Edward L. Filippine
Judge Hamilton, Assoc. Justice Thomas, Chief Justices Rehnquist and
Roberts, Jr., Clerk Bosley, Clerk Gans, and Clerk Suter)
( False Statements and fraudulent conveyances)

88. Paragraphs 1 through 70 are realleged and incorporated by reference as if set forth fully herein.

89. From at least 1988 through June of 2010. the Defendants, sought to use devices and instruments of communication by use of the mail, directly and indirectly caused to be submitted to another false statements or fraudulent conveyances that the Defendants knew or should have known were false and deceptive, practices or courses of in conducting business of the court which have operated as a fraud and deceit upon the Plaintiff.

90. By reason of the foregoing, pursuant to Section 1001(2)(3) of Title 18, Defendants aided and abetted the overall scheme of the conspiracy authorized by the Defendant (U.S.) by committing the act of mail fraud in violation of Sec. 1341 of Title 18.

## SIXTH CLAIM FOR RELIEF

**Aiding and Abetting Violation of Section 912 of Title 18**
(Against Judge James A. Pulowski, Judge Edward L. Filippine
Chief Justice Rehnquist, Chief Justice Roberts, Jr., Assoc.
Justice Thomas and Judges Missouri Supreme Court en banc)
(Impersonating a federal official and concealment "after the fact")

91. Paragraphs 1 through 70 are realleged and incorporated by reference as if set forth fully herein.

92. From 1989 through June of 2010, the Defendants, collectively conspired directly and indirectly schemed to cause one of their members a "state actor" to impersonate the the office of a federal Magistrate, have employed devices by the use of the mail to convey instruments associated with the courts of the United States and artifices to defraud the Plaintiff.

93. The Defendants collectively by scheme did act to conceal misrepresentations under the "seals" of the United States, having engaged in conduct the Defendants knew or were reckless in not knowing of the activities described above.

94. By reasons of the activities herein described, the Defendants have violated Section 912 of Title 18, and Pub.L. 104-292 H.R. 3166 of Oct. 11, 1966 sec. (a)(1-3) of the False Statement Accountability Act.

## SEVENTH CLAIM FOR RELIEF

### Aiding and Abetting Violations of Title 18 U.S.C. 2510 et seq. of the Omnibus Crime Control & Safe Street Act of 1986
(Against Directors (CIA), (NSA), (FBI), Secretaries (DOD),
Attorney Generals (DOJ),  Presidents, FISC Judges, or Magistrates)
(Warrant less searches or false procurement of warrants)

95. Paragraphs 1 through 70 are realleged and incorporated by references as if set forth fully herein.

96. The Defendants acted collectively with state actors to implement a retaliatory investigation against the Plaintiff in authorizing and the execution of a surveillance, eavesdropping program, having solicited others in the criminal facilitation of conduct, and falsely secured warrants without probable cause, or based upon false affidavit; or executed warrant less searches in violating Plaintiffs' civil rights under color of law.

97. Defendant knowingly and recklessly acting in disregard of the laws and Constitution of the United States safeguarding privilege and immunities afforded to all U.S. persons.

98. By reason of the foregoing, Defendants aided and abetted one another violating Title 18 U.S.C. 2521 et seq. of the Omnibus Crime Control & Safe Street Act of 1986, and Fourth Amendment, U.S. Constitution.

## EIGHTH CLAIM FOR RELIEF

### Aided and Abetted Violations Arts. 1,3,6,7,8,10,12,17,27(2) Universal Declaration of Human Rights ("UDHR")
(Against St. Louis University Hospital, Catholic Church i.e. Vatican,
Unknown Pathologist, Presidents, Members of Congress, Federal
Judiciary, Federal and State Attorney Generals, and State and
Federal Judges)
(Human and civil rights violation and conspiring to conceal offenses)

23

99. Paragraphs 1 through 68 are realleged and incorporated by reference as if set forth fully herein.

100. Defendants did act collectively in a conspiracy to deny access to the state and federal courts for redress of rights afforded under treaties, and other instruments of accords under the laws of the United States and International law of agreements, affording equal rights and due process of law within the borders of Member States having ratified standards affording civil and human rights, and the mechanism for addressing violations under the ("UDHR").

101. Defendants knew or recklessly disregarded facts establishing "human and civil rights" violations in the deprivation of the privilege and immunities afforded to the Plaintiff under the law of the United States and International Laws of agreement.

102. By reasons of the foregoing, Defendants aided and abetted by scheme to conceal "human and civil rights" violations and failing to prevent the deprivation of civil rights under the (UDHR) of December 10, 1948 Art. 1,3,6,7,8,10,12,17 and 27(a) and 42 U.S.C. S 1985 section 1986 respectively.

## NINTH CLAIM FOR RELIEF

### Violations of and Aiding and Abetting Violations
### of Fourteenth and Fifth Amendment U.S. Constitution

(Against Judge O'Shea, Judge Ryan, Judge Pudlowski, Judge Webber, Judge Buckles, Judge Hamilton, Judge Medler, Chief Judge Perry, Judge Shaw, Chief Judge Filippine, Assoc. Justice Thomas, Chief Justices Rehnquist and Roberts, Presidents, Solicitor Generals, Attorney Generals State of Missouri, U.S. Attorney Generals, Attorney Hawke, Office of General Counsel, U.S. Attorney Callahan, Clerks Bosley Jr., Gans, Woodward and Suter) (Conspiring to concealing secret hearings, failing to issue process of mandates and pleadings)

103. Paragraphs 1 through 70 are realleged and incorporated by reference as if set forth fully herein.

104. Defendants Clerks were required to make and keep records current and accurate of pleading filed before the Courts of the United States pursuant to Rule 79 Fed. R. Civ. P. and Rule 1 Sup. Ct. R., and Counsel of record for the United States were to issue service of any any pleading submitted to the court pursuant to Rule 5 Fed. R. Civ. P., and the Federal judges were to order or the Clerk is required to issue service of any orders, mandates, decisions, finding, etc immediately once entered by the courts pursuant to Rule 41 Sup. Ct. R. and Rule 79(d) Fed. R. Civ. P.

105. Defendants knowingly and recklessly engaged in a scheme of deceit in holding secret ex parte proceedings, and the filing of stealth pleadings disregarding the rules of procedure governing civil proceedings in the commission of constitutional torts.

106. By reason of the foregoing, Defendants aided and abetted the violations of the Plaintiff's right to due process of law and equal protection of law guaranteed under the

Fourteenth Amendment, by way of the due process Clause of the Fifth Amendment. In addition to a related case involving Plaintifff Jerry A. Johnson Defendants Magistrate Mary Ann L. Medler, District Judge E. Richard Webber, Attorney Stephan D. Hawke, and Office of the General Counsel knowingly and recklessly conspired with Defendant Clerk Woodward to deny Plaintiff's right to procedural default under Rule 55(a)(b) Fed. R. Civ. P. during the course of secret ex parte proceedings, and failing to apply precedent of Supreme Court in Marbury v. Madision, (1803) reasoning the Constitution supersedes federal Statute in controversy before federal Courts; and failing to adhere to Supreme Court precedent. Plaintiff's "supplementals" are enjoined under Rule 18 Fed. R. Civ. P.

## TENTH CLAIM FOR RELIEF

### Violation of and Aiding and Abetting Violations
### of First, Ninth and Tenth Amendments U.S. Constitution
(Against U.S. Congress, Missouri Legislature, District Court(s), U.S. Attorney General, Attorney General State of Missouri, Office of the U.S. Attorney, and U.S. Supreme Court)
(Conspiring to enact ex post facto law and retrospective court precedent in a civil and criminal admission case)

107. Paragraphs 1 through 70 are realleged and incorporated as if set forth fully herein.

108. Defendants in an enjoined conspiracy did enact ex post facto laws in an attempt to prevent a transfer of estate rights, to mitigate the civil and criminal liability of the Defendants and their co-conspirators. Furthermore, Defendant during secret ex parte hearings conspired to deny Plaintiff of their right to confrontation, the right to have the assistance of "counsel" of their choice, and denied the Plaintiff the right to a public hearing.

109. Defendants knowingly and recklessly engaged in a scheme of deceit by the Courts to prevent the Plaintiff from exercising a Seventh Amendment civil action for the purposes of a denial of the Plaintiff right to "protected speech", in an orchestrated effort to void redress based upon a class based animus in re to attorney/lawyer having access to Courts of the United States.

110. By reason of the foregoing, Defendants aided and abetted the violations of Plaintiff's right to due process of law and equal protection of law guaranteed under the Fourteenth Amendment.

111. In addition Defendants collectively sought to prevent Plaintiff from petitioning for redress based upon "counsel" not having a "license" in a scheme to deny Plaintiff's right under the Ninth and Tenth Amendments to

seek redress as a "group" pursuant to contractual obligations under Art. I, secs. 9 and 10 U.S. Const. and MoConst. Art. I, sec. 13 that prohibits the several States and United States from impairing and infringing upon contractual obligations in a fraud against the Plaintiffs' right to "protected speech" under the First Amendment to appoint representatives in lieu of the "vote" over the affairs of their estate and entitlements.

## PRAYER FOR RELIEF

**WHEREFORE,** the Plaintiff respectfully request that the Courts in this consolidated action pursuant to Rule 42 (a)(1,2) Fed. R. Civ. P. that the Courts should move and grant the following relief.

### I.

Enter Judgments in favor of the Plaintiff finding that the Defendants each did act collectively, or assisted directly or indirectly in a meeting of minds to conspire to violate civil rights and Titles promulgated as alleged herein.

### II.

Final Judgments permanently restraining and enjoining the Defendants, their agents, servants, operatives, contractors, employees and attorneys and all persons in active concert or participation with them who receive actual notice of the injunction by personal service or otherwise, and each of them, from committing future violations of Section 241 and Section 242 of Title 18.

### III.

Final Judgments permanently restraining and enjoining the Defendants, their agents servants, operatives, contractors, employees and attorneys and all persons in active concert or participation with them who receive actual notice of the injunction by personal service or otherwise, and each of them, from committing or aiding and abetting future violations of Sec. 103 [50 U.S.C.403-3](d)(1) of the National Security Act of 1947, Section [50 U.S.C. 413]9(b) & (50 U.S.C. 1807) of the National Security Act of 1947, Section 1805 (b) sec. (a)(5)(C) Title 50 of the Foreign Intelligence Surveillance Act of 1973, 50 U.S.C. sec. 403(a) of the CIA Act of 1949, Section 104(a) of the Act 50 U.S.C. S 463-4(a) of the CIA Act of 1947, Section 2(3) of the CIA Act of 1978.

### IV.

Final Judgments permanently restraining and enjoining the Defendants, their agents servants, operatives, contractors, employees and attorneys and all persons in active concert or participation with them who receive actual notice of the injunction by personal service or otherwise, and each of them, from committing or aiding and abetting

future violations of Sections SS 2510-2121 Title 18 of the Electronic Communication Privacy Act of 1986, and 18 U.S.C. SS 2510-2521 of the Electronic Communication Privacy Act of 1986.

## V.

Final Judgment permanently restraining and enjoining the Defendants office of the President, Members of the Congress and Judge of the federal Judiciary, their agents, operatives, contractors, employees and attorneys and all other persons in active concert or participation with them who receive actual notice of the injunction by personal service or otherwise, and each of them, from aiding and abetting and acting collectively to conceal future violations of Sections 1.1(b)(d) of Executive Order 12333, Section 2.7 of Executive Order 12333, and Section 3.1 of Executive Order 12333, H.R.Rep. No. 93-1380, 93d Cong., 2nd Sess. 8, S.Rep. 99-541, at 12(1986), reprinted in 1986 U.S.C.C.A.N. 3555and Art. I, (3)(h)(1)(A) & Art. I, (3)(h)(1)(C) of the Judicial Conduct and Disability Act of 1980.

## VI.

Final Judgments permanently restraining and enjoining the Defendants, their agents, servants, operatives, contractors, employees and attorneys and all persons in active concert or participation with them who receive actual notice of the injunction by personal service or otherwise, and each of them, from committing or continuing in aiding and abetting in the future acts of obstruction of justice and the administration of the same in violations of Section 1520.[2] of Title 18, 18 U.S.C. Sec. 2236 parts (a)(b)(c), 18 U.S.C. sec. (2)(a)(b)(i-v), 18 U.S.C. sec. 2235, 18 U.S.C. S 1341, 18 U.S.C. sec. 2519(1)(a-g), 18 U.S.C. S 3771(d) and (e), 18 U.S.C. sec. 2515, 18 U.S.C. 205(c)(1), 18 U.S.C. sec. 505(d)(2)(2), 18 U.S.C. sec. 371, 18 U.S.C. sec. 2236 and 18 U.S.C. sec. 3111, 18 U.S.C. sec. 1017, 18 U.S.C. sec. 709, 18 U.S.C. sec. 912 , 18 U.S.C. sec. 1519(a)(1), 18 U.S.C. sec. 1001.3, 18 U.S.C. S 1503, 1505 & 1510, and 18 U.S.C. S 1964(b).

## VII.

Final Judgments permanently restraining and enjoining the Defendants their agents, servant, operatives, contractors, employees and attorneys and all other persons in active concert or participation with them who receive actual notice of the injunction by personal service or otherwise, and each of them, from continuing said criminal enterprise across state lines involving the District of Columbia and State of Missouri violating the RICO Act of 1970 Pub.L. 91-452, 84 Stat. Ch. 96 18 U.S.C. S 1961 – 1968; or aiding and abetting future violations of Section 1981(b)(c) and Section 1983 of the Civil Rights Act of 1866, and Title VI of the Civil Rights Act of 1964.

## VIII.

An order under the 1986 Act 18 U.S.C. sec. 2521 as is warranted in a criminal admission of felony violations under Title III that the Court expedite this matter for trial by jury pursuant to Rule 38 Fed. R. Civ. P. to afforded final adjudication of the foregoing, for the Defendants have conspired collectively to evaded justice and aided and abetted in assisting and delaying the investigation and prosecution of persons having committed criminal offenses against the laws of the United State and constitutional torts from 1988-present, and that the court should grant Plaintiff a "speedy trial" for the Defendants have "waived" the prior 18 months provision relative to civil proceedings before this Court retroactive to the 16th day of December 1991.

## IX.

Final Judgment directing the Defendant United States pursuant to the doctrine of "exclusive federal damages remedy" for civil rights violations committed by state and federal actors pursuant to section 1983 to pay civil moneys pursuant to Plaintiff's relief as prayed in attached supporting Brief as uncontested compensatory and punitive damages under "no contest" waiver retroactive to December 16, 1991 "post" civil trial jury proceedings. Granting such other and further relief against others Defendant (et al) not found to be state actors for the purpose of civil liability transferred to the Defendant United States, and that this Court deems just and proper for Counsel fees for services rendered as "next friend" and cost. Plaintiff is prepared to file seven separate complaints listing Plaintiff, pro se and a representative complaint on behalf of the Plaintiff Decedent P.D. Johnson and Vandelia W. Johnson, Deceased Administrator, with seven separate request for trial by jury pursuant to Rule 38 Fed. R. Civ. P.; or the alternate Plaintiff's consolidated Complaint and supporting Brief enjoins Plaintiffs in lieu of Class Rules 19 and 23 Fed. R. Civ. P.

The Defendant United States has "waived" the cost of filing fee and any prior liability caps cited under Statute and/or Court precedent, and Defendant (et al) have waived any prior immunity under the Eleventh Amendment, state and federal Statues and prior precedent set by any court of the United States.

## X

**The Defendant, United States on the 16th day of December 1991 in lieu of Counsel, Solicitor General,  Kenneth W. Starr, Department of Justice in re Johnson, et al v. United States, et al filed and set for hearing by the Supreme Court, Defendant executed and served upon Plaintiff' Counsel a no contest "waiver" that the United States has waived immunity from suit see Federal Deposit Insurance Corp v. Meyer, 510 U.S. 471, 475 (1994); and the Supreme Court in 1991 was the court of jurisdiction at**

the point Counsel for the Defendant, United States executed said waiver of immunity that defined jurisdiction in re Johnson, et al v. United States, et al before the U.S. Supreme Court see Id., quoting United States v. Sherwood, 312 U.S. 584, 586 (1941). The Judiciary Act of September 24, 1789 sec. 342 First Congress Sess. 1, ch. 20 1789 states in pertinent part "...it is assumed the court knows the law..."; and the Supreme Court en banc in 1991 knew that the "waiver" defined that the Supreme Court had jurisdiction. Pursuant to 1986 Act 18 U.S.C. sec. 2521 the Attorney General was to initiate a civil proceeding before the Supreme Court in 1991 to "enjoin" with the court in addressing the criminal admission to felony violations under Title III; and the Supreme Court pursuant to the 1986 Act in 1991-present to enter an order "as warranted" for final determination under Johnson, et al v. United States, et al under the tenures of Chief Justices William H. Rehnquist and John G. Roberts, Jr.,.

XI

Plaintiff action is cited under 28 S 1346(b) or the alternate S 1983, Plaintiff has revived suit before the district court having jurisdiction over the waiver by the United States see Richards v. United States, 369 U.S. 1, 6 (12962) based upon newly discovered evidence (see Exhibits # 1 and 2 attached to supporting Brief). The mere existence of the waiver executed "post" notice of filing by the Supreme Court in 1991 is consistent as prerequisite for jurisdiction see United States v. Mitchell, 463 U.S. 206, 212 (1983). That the Administrative Procedures Act 5 U.S.C.S SS 701-706 attaches against Plaintiff's request for injunctive relief directing the Defendant to cease and desist. The Defendant United States in lieu of employees of all (3) branches of the U.S. government in an enjoined conspiracy with state actors; or having aided and abetted in the concealment of criminal negligent wrongful acts or omissions committed by government employees acting in concert with others are cited pursuant to 28 U.S.C.S S 2679(a); and the Defendant's operatives, contractors, agents, etc assisting in the criminal enterprise who (1) the government ordered and controlled the conduct of the aforementioned, and (2) the government supervised their actions by the government Agencies the ("CIA") and ("NSA") are liable under 28 U.S.C.S S 2671 see United States v. Orleans, 425 U.S. 807, 48 L.Ed.2d 390, 96 S.Ct. 1971 (1976) see also United States v. Mitchell, 463 U.S. at 218; restrictions cited under Chapter 177 of the Judicial Code 28 U.S.C. SS 2671-2680 do not apply in this case. Facts that are not in dispute (1) the Defendant has "waived" immunity, (2) Section 1983 provides for a federal remedy for civil rights violations committed by state actors, and (3) Defendant has "waived" the prohibition against accessing punitive damages under the FTCA stemming from the Defendant's failure to plead the exemption before the District Court and Supreme Court in 1989-1991.

29

XII

The District Court for the District of Columbia and District Court for the
Eastern District of  have concurrent jurisdiction venue for the tortious acts
authorizing the surveillance program by the Executive Branch, the financing
of the criminal enterprise was facilitated by the Congress, and the shielding
from civil culpability was manifested by the Supreme Court in Washington
D.C.; but the actual execution of the surveillance and intercept program was
executed where the Plaintiffs reside in the State of Missouri 28 U.S.C.S
S 1402(b). The State of Missouri under the MoConst. of 1875 Art. I, sec.
13 is a provision under state law prohibiting the impairing and infringing in
contractual obligation, and both Washington, D.C. and the State of Missouri
have tort laws governing "housebreaking", "fraud against tangible property"
"burglary", "tampering with an automobile", and "theft of property and
being in possession" of the same  . Defendant United States' actions in
suppressing the Plaintiff's right to exercise their contractual obligations as
the "group" in petitioning for redress in lieu of "counsel" of choice in a
Seventh Amendment case constituted a denial of "protected speech" by the
federal judiciary in both Washington D.C. and in the City of St. Louis,
Missouri where the actions took place from 1989-present. see Miree v.
Dekalb County, 433 U.S. 25, see also Loeffler v. Frank, 486 U.S. 549, 554
(1988). As applicable to "counsel fee" Defendant United States has waived
prior prohibition under 28 U.S.C.S S 2678, and any prior cap liability.
Administrative notice was served upon the Attorney General, Eric H. Holder,
Jr., in a pro se Complaint pursuant to the FTCA, He has responsibility under
the 1986 Act 18 U.S.C sec. 2521 in Title III felony violation cases to initiate a
"civil proceeding" with notice of service upon the Office of the United States
Attorneys. Administrative claim pursuant to 28 U.S.C. S 2675(b) is waived
as non-responsive from 2009-present. Under penalty of perjury the foregoing is
true and correct.

Dated June 15, 2010          For:          Jeffrey L.G. Johnson,
                                           Executor, Successor Administrator,
                                           Personal Representative and Proxy,
                                           pro se For the Petitioners.
                                           5310 N. Euclid # 415
                                           St. Louis, MO 63115
                                           (314) 382-6770

OF COUNSEL "NEXT FRIEND"

Joseph Johnson
10338 Bon Oak Dr.
St. Louis, MO 63136
(314) 867-5407                    30

CERTIFICATE of SERVICE

A copy of the plaintiff's Complaint and supporting Brief to reinstate/reopen with attached Civil Cover Sheet with a request for jury trial checked thereon has been mailed to the Office of the Clerk, District Court for the Eighth Circuit Eastern District of Missouri. A copy of the plaintiff's Complaint and supporting Brief as an original action in re diversity civil claim with attached Civil Cover Sheet has been mailed to the Office of the Clerk, District Court for the District of Columbia. Whereas, in lieu of a multidistrict litigation involving concurrent jurisdictions for criminal acts committed within the State of Missouri citing defendants under the original action before the Eighth Circuit in 1989-1991 for fraud against an estate, a frivolous suit against 3rd party Heirs violating State law, and denial of estate rights by state actors a right authorized under state and federal Laws. A conspiracy involving federal actors in Washington D.C. citing defendants added "post" proceedings before the Eighth Circuit in lieu of admission by the Office of the United States Attorneys recognizing defendants, et al responsible for the criminal authorization, attempted concealment of and financing of acts violating federal laws see attachment Exhibits # 1 & # 2. The common link to both jurisdictions in the defendant James A. Pudlowski, Chief Judge of the Missouri Court of Appeals impersonating the office of a federal Magistrate. Chief Judges Catherine D. Perry of the Eighth Circuit and Royce C. Lamberth of the District Court for the District of Columbia under "federal remedy" will have to determine the process for discovery and for the taking of depositions. Proceeding are in accordance with L.Civ.R. of the Eighth Circuit the original court of jurisdiction to afford joinder under Rule 18 Fed. R. Civ. P. of "supplementals" pending before the Eighth Circuit. A copy of the plaintiff's Complaint and Brief has been mailed to the Office of the United States Attorneys, Attn: Attorney General Department of Justice, 950 Pennsylvania Ave., N.W. Washington, DC 20530. Under penalty of perjury the foregoing is true and correct.

_Jeffrey L.G. Johnson_   Date: 6/15/10
Jeffrey L.G. Johnson, Executor, Successor
Administrator, Personal Representative,
Proxy, pro se for the Plaintiffs

_Joseph Johnson_   Date: 6/15/10
Joseph Johnson,
Counsel of record "Next Friend
For the Petitioner, et al